FILED

ORANGE CO., C.S.C.
BY _____ Plaintiff,

STATE OF NORTH CAROLINA     IN THE GENERAL COURT OF JUSTICE
COUNTY OF ORANGE                       DISTRICT COURT DIVISION
                                                 File No. 16-CVD-_____

| | |
|---|---|
| MARIA SMITH, | |
| Plaintiff, | |
| vs. | COMPLAINT |
| EQUIFAX INFORMATION SERVICES, LLC, | JURY TRIAL DEMANDED |
| Defendant. | |

NOW COMES MARIA SMITH, by and through counsel, and makes this Complaint against Defendant EQUIFAX INFORMATION SERVICES, LLC, alleging and saying as follows:

## INTRODUCTION:

More than 16.6 million persons, that is, 7% of all adult Americans, are victims of identity theft each year.[1] Federal law requires that a consumer reporting agency ("CRA") protect victims from the consequences of identity theft by blocking fraudulent information from a consumer's report when a consumer provides documentation of identity theft. CRAs must conduct reasonable reinvestigations of accounts that consumers dispute as theirs. CRAs also have a duty to ensure maximum possible accuracy of reports that they release to third parties about a consumer's credit history.

This lawsuit is about a CRA that did none of those things. Instead, it refused to block fraudulent information from an identity theft victim's report. It illegally and

---

[1] Victims of Identity Theft, 2012, 1. U.S. Dept. of Justice, Bureau of Justice Statistics. December 2013, NCJ 243779

incorrectly insisted that a fraudulent account was Ms. Smith's own, repeatedly verified the account as hers despite her disputes, and released a credit report containing the fraudulent, delinquent account to one of Ms. Smith's existing creditors.

## JURISDICTION

1. This action arises out of Defendant's violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, et seq., in its illegal and incorrect credit reporting of a fraudulent consumer credit card account.

2. Jurisdiction of this Court arises pursuant to 15 U.S.C. § 1681p.

3. Venue is proper in this judicial district because Plaintiff resides here and Defendant engaged in commercial activities here by marketing and selling its credit reporting services to businesses and citizens of this district.

4. This case is brought within two years of the FCRA violations in compliance with the statute of limitations at 15 U.S.C. § 1681p.

## PARTIES

### Plaintiff Maria Smith

5. Plaintiff MARIA SMITH ("Ms. Smith") is a natural person residing in Orange County, North Carolina.

6. Ms. Smith is a "consumer" as defined by FCRA at 16 U.S.C. § 1681a(c).

### Defendant Equifax Information Services, LLC

7. Defendant EQUIFAX INFORMATION SERVICES, LLC, ("EQUIFAX") is an Ohio corporation with a principal place of business at 1550 Peachtree Street, NW,

2

Atlanta, Georgia 30309, and a registered agent, Corporation Service Company, at 327 Hillsborough St., Raleigh, North Carolina 27603-1725.

8. EQUIFAX is a "consumer reporting agency" as defined by 15 U.S.C. § 1681(f).

9. EQUIFAX is regularly engaged in the business of assembling, evaluating, and distributing information concerning consumers for the purpose of furnishing consumer reports, as defined by 15 U.S.C. § 1681(d), for third parties.

10. Third parties pay EQUIFAX in return for the receipt of such consumer reports.

## FACTUAL ALLEGATIONS

11. Plaintiff Maria Smith is a college instructor and education consultant.

12. During the time of the events described herein, Ms. Smith was in the midst of a challenging period in her life.

13. She was dire straits financially due to a period of underemployment, and her savings were depleted.

14. She was struggling to maintain her professional identity and self-esteem while searching for academic job opportunities.

15. Nevertheless, she never missed or had late payments on her bills, and was proud of her ability to maintain good credit despite her reduced financial circumstances.

16. During the summer of 2014, Ms. Smith learned of a security breach at a doctor's office, in which some of her personal identifying information, including her

3

Social Security Number and birth date, had been compromised.

17. Ms. Smith was concerned that this security breach might put her at risk of identity theft.

### August 1, 2014 Equifax Report

18. As part of the process of setting up credit monitoring to safeguard against identity theft following the security breach at her doctor's office, Ms. Smith obtained and viewed her consumer credit files compiled and maintained by EQUIFAX ("EQUIFAX report") on August 1, 2014.

19. Ms. Smith discovered that a company named Comenity Bank ("Comenity") was reporting an account ("Account") in her name to EQUIFAX, and that EQUIFAX was, in turn, including the Account on the EQUIFAX report.

20. The August 1, 2014 EQUIFAX report indicated that the Account was for the ubiquitous mall lingerie shop, Victoria's Secret.

21. The August 1, 2014 EQUIFAX report stated that the Account was delinquent.

22. The August 1, 2014 EQUIFAX report also categorized the Account as a "negative" account.

23. The Account was the only entry on Ms. Smith's credit report that EQUIFAX categorized as "negative."

24. The representations about the Account in the August 1, 2014 EQUIFAX report were false.

4

25. Ms. Smith did not have any accounts with Comenity, nor was she delinquent on any of her existing accounts.

26. The August 1, 2014 EQUIFAX report also listed an address for Ms. Smith in New City, New York, that she did not recognize and where she had never lived.

27. Ms. Smith immediately by telephone disputed to EQUIFAX the credit reporting of the Account with EQUIFAX and the unknown address.

28. Upon information and belief, based on communications with EQUIFAX, after receiving Plaintiff's dispute, EQUIFAX asked COMENITY to re-investigate the status of the Account.

29. While waiting for a response to her dispute, Ms. Smith reported the apparent identity theft to law enforcement.

30. Law enforcement was unable to determine in what jurisdiction the crime occurred, or how to begin to determine the identity of the perpetrator.

**August 15, 2014 Equifax Dispute Response**

31. On or about August 15, 2014, EQUIFAX responded to Ms. Smith's dispute, deleting the unknown address from her credit file.

32. However, EQUIFAX also stated that it had verified that its prior reporting as true and that the delinquent Account belonged to Ms. Smith.

33. EQUIFAX's dispute response also stated that Ms. Smith was "30-59 Days Past Due" paying on the account, and that the account had a "Past Due" balance of $70.00.

34. EQUIFAX's representations about the Account in the August 15, 2014 EQUIFAX dispute response were false in that Ms. Smith did not have any accounts with Comenity, nor was she delinquent on any of her existing accounts.

35. Ms. Smith was outraged that, despite having obtained EQUIFAX's credit monitoring service as a direct result of the security breach at her doctor's office, EQUIFAX refused to believe she could have been the victim of identity theft.

36. Ms. Smith, through counsel, now sent EQUIFAX a written dispute and a request that EQUIFAX block the identity theft account from appearing on her EQUIFAX report pursuant to 15 U.S.C. § 1681c-2(a).

37. 15 U.S.C. § 1681c-2(a) provides the following:

> *Except as otherwise provided in this section, a consumer reporting agency shall block the reporting of any information in the file of a consumer that the consumer identifies as information that resulted from an alleged identity theft, not later than 4 business days after the date of receipt by such agency of–*
>
> *(1) appropriate proof of the identity of the consumer;*
>
> *(2) a copy of an identity theft report;*
>
> *(3) the identification of such information by the consumer; and*
>
> *(4) a statement by the consumer that the information is*

6

*not information relating to any transaction by the*

*consumer.*

38. In making her request for a fraud block, Ms. Smith submitted to EQUIFAX a twenty-five (25) page package of documents (the "fraud block package") regarding the security breach and the identity theft account.

39. The fraud block package submitted to EQUIFAX included the following:

   a. A copy of Ms. Smith's driver's license;

   b. A copy of her police report of the identity theft and the police officers' contact information;

   c. An affidavit identifying the identity theft account and stating that it was not related to any transaction of hers; and

   d. Documentation that Ms. Smith had received from her doctor regarding the nature and timing of the security breach, which closely coincided with the date that EQUIFAX was reporting as the date of opening of the Account.

40. EQUIFAX never initiated the requested fraud block, nor explained what was wrong with Ms. Smith's fraud documentation.

**September 7, 2014 Equifax Dispute Response**

41. On or about September 7, 2014, EQUIFAX responded to Ms. Smith's dispute, stating only that it had verified its prior reporting as true and that the delinquent Account belonged to Ms. Smith.

42. EQUIFAX's dispute response also stated that Ms. Smith was "60-89 Days

7

Past Due" paying on the account, and that the account had a "Past Due" balance of $105.00.

43. EQUIFAX's representations about the Account in the September 7, 2014 EQUIFAX dispute response were false in that Ms. Smith did not have any accounts with Comenity, nor was she delinquent on any of her existing accounts.

44. Ms. Smith, again through counsel, sent EQUIFAX a third dispute, again including all of Ms. Smith's documentation that she was a victim of identity theft.

45. The letter notified also EQUIFAX that Ms. Smith was undergoing an academic job search where she might have to allow a potential employer to view her credit report, and that she was very anxious about getting the fraudulent, delinquent account blocked, as it was the only negative item on her report.

46. While Ms. Smith waited for a response to her dispute, her credit monitoring service informed her of ongoing, negative reporting by EQUIFAX.

47. For example, on October 8, 2014, the credit monitoring service informed Ms. Smith that EQUIFAX had reported the Comenity Account as "120 days or more" past due on payments on the Account, and that the "Past Due" balance on the Account had increased to $185.00.

48. Because Ms. Smith, an identity theft victim, needed to keep close watch for additional fraudulent activity on the Account and on her credit file as a whole, she could not simply ignore the alerts about the haphazard changes to her EQUIFAX report.

49. Awareness that EQUIFAX was reporting even more negative information

8

about her at the same time that it purported to be investigating her dispute made the situation more nerve-wracking for her.

50. Furthermore, in September 2014, after Ms. Smith had already disputed the Account twice, EQUIFAX released a report containing the fraudulent, delinquent Account to one of Ms. Smith's existing creditors, Macy's.

51. Ms. Smith had a perfect payment history with Macy's, and was very embarrassed that this creditor had seen a purported delinquent account on her report.

52. She also worried Macy's might now see her as a credit risk and reduce her credit line or close her account.

### October 10, 2014 Equifax Dispute Response

53. On or about October 10, 2014, EQUIFAX responded to Ms. Smith's most recent dispute of the Account, stating only that it had verified its prior reporting as true and that the delinquent Account belonged to Ms. Smith.

54. EQUIFAX's dispute response also stated that as of that date that Ms. Smith was "60-89 Days Past Due" paying on the Account, and that the account had a "Past Due" balance of $105.00.

55. EQUIFAX's representations about the Account in the October 10, 2014 EQUIFAX dispute response were false in that Ms. Smith did not have any accounts with Comenity, nor was she delinquent on any of her existing accounts.

### Damages to Ms. Smith

56. As a result of the incidents described hereinabove, Ms. Smith incurred great

9

expense of time and energy trying to fix a situation that was not her fault, and corresponding lack of time and energy for work, family, and friends.

57. She felt discouraged from applying for credit.

58. She experienced feelings of emotional distress, such as anxiety and fear.

59. She was often tearful, and felt that she was fighting against falling into a full-blown depression.

60. She experienced physical manifestations of emotional distress in that she was grinding her teeth constantly, leading to soreness in her jaw and headaches.

61. She was embarrassed and humiliated that her creditor, Macy's, had seen the EQUIFAX report containing the false information about her.

62. As her repeated efforts to correct her EQUIFAX report failed, Ms. Smith felt hopeless, as if her life was out of control.

63. Ms. Smith also felt a complete loss of privacy, in that she had to hire an attorney, make several police reports, and repeatedly explain the situation to family, friends, and customer service persons at EQUIFAX.

64. During the time that the incorrect credit reporting about the Account was on her EQUIFAX report, Ms. Smith was also on a job search.

65. Some of the jobs that she applied for would require her, if she received a job offer, to give the potential employer access to her consumer report.

66. She agonized over the thought of the potential employer seeing a report that made it look as if she was a deadbeat who had run up a bill at a tacky lingerie store and

10

then refused to pay it.

67. Additionally, Ms. Smith also incurred out-of-pocket expenses, including the cost of making copies of documents for her attorney.

68. Upon Ms. Smith's requests for verification and correction of the Comenity tradeline, and in accordance with its standard procedures, EQUIFAX did not evaluate or consider any of Ms. Smith's information, claims, or evidence, and did not make any attempt to substantially or reasonably verify any representations Comenity made in response to reinvestigation requests.

69. Upon information and belief, EQUIFAX has a history of wrongful credit reporting for identity theft accounts. See, e.g., affirmations of jury verdicts against Equifax and in favor of identity theft victims in Robinson v. Equifax Info. Servs., LLC, 560 F.3d 235 (4th Cir. 2009); Sloane v. Equifax Info. Servs. LLC, 510 F.3d 495, 500 (4th Cir. 2007); Drew v. Equifax Info. Servs., LLC, 2010 U.S. Dist. LEXIS 131643 (N.D. Cal. Dec. 3, 2010).

70. Furthermore, EQUIFAX knew or should have known from its own experience and from the public record that Comenity had a history of wrongful collection and/or credit reporting on identity theft accounts. See, e.g., See, e.g., Dao v. Trans Union, LLC, et al., Docket No. 0:14-cv-01219 (D. Minn. Apr 22, 2014); Nguyen v. Comenity Bank, LLC, et al., Docket No. 0:15-cv-00027 (D. Minn. Jan 07, 2015); and Lyons v. Experian Information Solutions, Inc., et al, Docket No. 3:14-cv-00211 (N.D. Miss. Sept. 26, 2014).

71. The internal policies and procedures of EQUIFAX do not appear to place any value on its obligations under FCRA to assist identity theft victims, to report credit entries accurately, or to reinvestigate carefully when notified by of consumers of fraudulent tradelines on their reports from EQUIFAX.

72. The policies and procedures of EQUIFAX evince willfulness, wantonness, and reckless disregard for the rights and interests of consumers, and led directly to the injuries to Ms. Smith described hereinabove.

## CAUSES OF ACTION

### Count One:
### Violations of the Fair Credit Reporting Act ("FCRA")
### 15 U.S.C. §§ 1681 et seq.

73. The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

74. Defendant EQUIFAX has violated the FCRA at 15 U.S.C. § 1681c-2 by failing to block information resulting from an identity theft.

75. Defendant EQUIFAX has violated the FCRA at 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it published and maintains concerning the Plaintiff.

76. EQUIFAX has also violated the FCRA at 15 U.S.C. § 1681i by actions that include, but are not limited to the following:

   a. Failing to correct or delete inaccurate information in the Plaintiff's credit

12

file after receiving actual notice of such inaccuracies;

b. Failing to conduct a proper reinvestigation of Plaintiff's dispute;

c. Failing to forward all relevant information to COMENITY;

d. Failing to maintain reasonable procedures for identifying and verifying disputed information in Plaintiff's credit file;

e. Relying upon verification from a source, Comenity, that it had reason to know was unreliable, because it knew or should have known of public record complaints against Comenity for wrongful collection and/or credit reporting on settled or paid-off debts.

77. As a result of EQUIFAX's conduct, action, and inaction, Plaintiff suffered damages as described hereinabove.

78. EQUIFAX's conduct, action and inaction was willful, rendering it liable for actual, statutory, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

79. In the alternative, Defendant was negligent, entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

80. The Plaintiff is entitled to recover costs and attorney's fees from Defendant in an amount determined by the Court pursuant to 15 U.S.C. § 1681n, or, in the alternative, 15 U.S.C. § 1681o.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff MARIA SMITH prays the Court to:

1. Award her actual, statutory, and punitive damages in an amount to be determined at trial against Defendant pursuant to the violations of 15 U.S.C. § 1681, et seq. by that Defendant alleged therein;

2. Award her her costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1681n (or, in the alternative, 15 U.S.C. § 1681o);

3. Award her pre-judgment and post-judgment interest;

4. Grant trial before a jury on all issues so triable; and

5. Grant such other and further relief as the Court deems just and proper.

THIS the 3rd day of June, 2016.

Respectfully submitted by:   */s/ Suzanne Begnoche*
Suzanne Begnoche, Attorney at Law
Attorney for Plaintiff
NCSB # 35158
P.O. Box 2035
Chapel Hill, NC 27515
Telephone: (919) 960-6108
Facsimile: (919) 500-5289
suzanne.begnoche@begnochelaw.com

14